**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DEBRA AUSTIN, TAMMY BAKER,
CHRISTIANE MILLER, and
SUZANNE WILEY, on behalf of
themselves and all others similarly
situated,**

    **Plaintiffs,**

**v.**

**GRAND CANYON UNIVERSITY,
INC., and GRAND CANYON
EDUCATION, INC.,**

    **Defendants.**

**CIVIL ACTION FILE
No. 1:19-cv-03734-SCJ**

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss

Amended Complaint (Doc. No. [17]), Defendants' Second Motion for

Arbitration (Doc. No. [18]), and Plaintiffs' Motion to Defer Ruling re: [18]

Second Motion for Arbitration (Doc. No. [19]).

1

## I.    **BACKGROUND**

Defendant Grand Canyon University ("GCU") is a non-profit university offering over 200 graduate and undergraduate degree programs online and at GCU's Phoenix, Arizona campus. Doc. No. [17-1], p. 4. Defendant Grand Canyon Education, Inc. is a services partner that serves colleges and universities around the country.[1] Id. Plaintiffs Debra Austin, Tammy Baker, Christiane Miller, and Suzanne Wiley (collectively, "Plaintiffs") are all former students of GCU's online programs. Id. at 3–7, ¶¶ 2–5.

On October 1, 2019, Plaintiffs filed their Amended Class Action Complaint alleging claims for fraudulent omission, fraudulent and intentional misrepresentation, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Arizona Civil RICO Act, and the Arizona Consumer Fraud Act. See Doc. No. [12]. Specifically, Plaintiffs allege that Defendants knowingly and fraudulently induced students

---

[1]    Defendants state that "[t]he Complaint improperly names Grand Canyon University, Inc. as a Defendant. Grand Canyon Education, Inc. d/b/a Grand Canyon University was the legal entity that provided educational services to Plaintiffs. During the timeframe alleged in the Complaint, Grand Canyon Education, Inc." Doc. No. [17-1], p. 4., n. 1.

to enroll in degree programs which were not accredited in the states where the students wished to practice. Id. at 12–13.[2]

Defendants have filed both a Motion to Dismiss the Amended Complaint (Doc. No. [17]) and a Motion to Compel Arbitration (Doc. No. [18]). The Motion to Dismiss argues (1) this Court lacks personal jurisdiction over Defendants for all claims asserted by Baker, Miller, and Wiley; (2) all of Austin's claims and one of Baker and Wiley's claims are barred by the statute of limitations; (3) Plaintiffs' fraud-based claims fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard; (4) Plaintiffs fail to state a claim under the Federal or Arizona RICO Acts and (5) Plaintiffs fail to state a claim for unjust

---

[2]      Plaintiffs allege Defendants perpetrated the alleged fraud in several ways:

> [F]irst, by using different corporate entities and third-party vendors to recruit students for unaccredited programs; second, by making sure that very few students in the unaccredited programs completed the programs, thereby greatly reducing the likelihood that the program's unaccredited status would become known the student; and third, by training recruiters, who double as student 'advisors' at GCU, to misrepresent accreditation status in various ways, including by reference to GCU's general accreditation. In Defendants' repeated communications with Plaintiffs and the Class members – via email, online, phone, and mail – they always failed to provide the critical information about accreditation.

Doc. No. [12], pp. 90–91, ¶ 180.

enrichment. The Motion to Compel Arbitration (Doc. No. [18]) argues that Austin is contractually required to arbitrate her claims against Defendants. In the event this Court does not dismiss Baker, Miller, and Wiley's claims for lack of personal jurisdiction, Defendants argue they too are governed by an arbitration agreement.

Plaintiffs' Motion to Compel Arbitration (Doc. No. [19]) argues that, as a matter of law, Defendants are precluded from compelling arbitration by the Borrower Defense Regulations. In the alternative, they move the Court to allow limited arbitration-related discovery before deciding Defendant's Motion to Compel Arbitration.

## II.   **MOTION TO DISMISS**

Defendants have moved to dismiss under both Rule 12(b)(2) and 12(b)(6). See Fed. R. Civ. P. 12(b)(2); (6). They argue: (1) the Court lacks personal jurisdiction over Defendants for Baker, Miller, and Wiley's claims (Doc. No. [17-1], pp. 9–12); (2) all of Austin's claims and one of Baker and Wiley's claims are barred by the statute of limitations (id. at 12–15); (3) Plaintiffs' fraud-based claims (Counts I, II, III, IV, V, VI) fail to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) (id. at 16–23); (4) Plaintiffs fail

to state a claim under the federal or Arizona RICO statutes (id. at 23–27); and (5) Plaintiffs fail to state a claim for unjust enrichment (id. at 28).

### A. Legal Standard

A plaintiff must establish a *prima facie* case of jurisdiction to survive a 12(b)(2) motion to dismiss. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). If "the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Id.; see also Aero Toy Store, LLC v. Grieves, 279 Ga. App. 6515, 524, S.E.2d 734, 741 (2006) ("Any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction.").

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts the factual allegations made in the complaint as true and construes them in the light most favorable to the plaintiff. Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). A complaint will be dismissed for failure to

state a claim only if the facts as pled do not state a claim that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007).

In order to state a plausible claim, a complaint must  plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Fin. Sec. Assur., Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted). Additionally, courts may address a statute of limitations defense on a Rule 12(b)(6) motion when "it is apparent from the face of the complaint that the claim is time-barred." <u>Patel v. Diplomat 1419VA Hotels, LLC</u>, 605 F. App'x 965, 966 (11th Cir. 2015).

## B.  **Personal Jurisdiction**

Plaintiffs argue they have sufficiently alleged personal jurisdiction in this case. <u>See</u> Doc. No. [21], p. 3. They argue that "jurisdiction and venue are proper pursuant to the Class Action Fairness Act." <u>Id.</u> However, as another court in

this district recently noted, "that statute convers only subject-matter jurisdiction, not personal jurisdiction." Carr et al v. Grand Canyon Univ. et al, No. 1:19-cv-01707-TCB, ECF. No. [24], p. 5 (N.D. Ga. Aug. 19, 2019).

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment. McCarthy v. Yamaha Motor Mfg. Corp., 994 F. Supp. 2d 1318, 1323 (N.D. Ga. 2014) (citing Diamond Crystal Brands, Inc. v. Food Movers Inter., Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010)). Georgia's long-arm statute confers personal jurisdiction to the maximum extent allowed by the Due Process Clause of the federal Constitution. See Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624, 627; Complete Concepts, Ltd. v. General Handbag Corp., 880 F.2d 382, 388 (11th Cir. 1989); First United Bank of Miss. v. First Nat'l Bank of Atlanta, 255 Ga. 505, 340, S.E.2d 597, 599 (1986).

The Court finds that Plaintiffs have pled sufficient facts to show that Defendants "transact business" in Georgia within the meaning of the long-arm statute. See Doc. No. [21], p. 5; O.C.G.A. § 9–10–91(1). Defendants argue that, even so, their business in Georgia is insufficient to confer general jurisdiction,

and that specific jurisdiction is lacking as to Plaintiffs Baker, Miller, and Wiley's claims. Doc. No. [22], pp. 3–5.

### 1. *General Jurisdiction*

As the Eleventh Circuit has noted, the Supreme Court has clarified that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C., 723 F. App'x 871, 874 (11th Cir. 2018) (citing Daimler AG v. Bauman, 571 U.S. 117 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011))). The "paradigm" forums in which a corporate defendant is "at home," the Supreme Court explained, are the corporation's place of incorporation and its principal place of business. See Daimler, 571 U.S. at 136, Goodyear, 564 U.S. at 924. "But in-state business, we clarified in Daimler and Goodyear, does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state]." BNSF Ry. Co. v. Tyrrell, ___ U.S. ___, 137 S.Ct. 1549, 1558–59 (2017).

8

Rather, general jurisdiction extends beyond these forums only in "an exceptional case," where a foreign business' operations in another state are "so substantial and of such a nature as to render the corporation at home in that State." Daimler, 571 U.S. at 139, n. 19. The Daimler Court suggested that Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), exemplified such an "exceptional case." Daimler, 571 U.S. at 139 n. 19. In Perkins, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. 342 U.S. at 447–48.

Plaintiffs have alleged that Defendants conduct considerable business in Georgia. Doc. No. [21], pp. 7–8. However, in-state business is not sufficient render a defendant "essentially at home" in a state which is not its principal place of business or state of incorporation. BNSF Ry. Co., 137 S.Ct. at 1558–59. Plaintiffs have not shown that this is an "extraordinary case" where Defendants are "essentially at home" in a foreign state. Thus, general personal jurisdiction is improper. See also Carr, No. 1:19-cv-01707-TCB, ECF. No. [24], p. 5–6. (finding these same Defendants were not subject to general jurisdiction in Georgia).

Plaintiffs Baker, Miller, and Wiley's claims against Defendants are completely unrelated to the state of Georgia. See Doc. No. [12], pp. 4–7, ¶¶ 3–5

(stating these Plaintiffs are citizens of and intended to leverage their GCU degrees in Ohio, Texas, and Indiana, respectively). Because Defendants are not subject to general jurisdiction in Georgia, their claims must be dismissed for lack of personal jurisdiction.

### 2. *Specific Jurisdiction*

Next, the Court must consider whether Defendants are subject to specific jurisdiction for the remaining Plaintiff Austin's claims. In specific jurisdiction cases, federal courts apply a three-part due process test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Rowe, 723 F. App'x at 875. As the Eleventh Circuit has held, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." Diamond Crystal Brands, Inc. v. Food Movers Inter., Inc., 593 F.3d 1249, 1267 (11th Cir. 2010).

Defendants do not appear to dispute that they are subject to specific jurisdiction for Austin's claims. <u>See</u> Doc. No. [17-1], p. 9. Defendants argue that "Baker, Miller, and Wiley do not—and cannot—allege that their claims arise out of Defendants' contacts with Georgia" as they "are not Georgia citizens or enrolled in any GCU program in Georgia." <u>Id.</u> Plaintiff Austin, however, "is a citizen of the State of Georgia who signed up for Grand Canyon University's educational leadership doctorate program [in Georgia]." <u>See</u> Doc. No. [12], p. 3, ¶ 2. Plaintiffs have alleged Defendants purposefully availed themselves of the privilege of doing business in Georgia—they estimate Defendants have some 3,000 students in the state and reap "millions of dollars of tuition payments" from those students "each quarter." Doc. Nos. [17-1], p. 5; [12], pp. 16–17, ¶¶ 22, 23. The Court finds it does not offend fair play and substantial justice to exert jurisdiction over Defendants for claims related to their courses offered and taken in Georgia. Defendants are thus subject to specific personal jurisdiction for Austin's claims.

## C. <u>Statute of Limitations</u>

Defendants argue that all of Plaintiff Austin's claims are nonetheless barred by the statute of limitations, because she "enrolled at GCU almost six years ago." Doc. No. [17-1], pp. 12–14. Defendants assert that because "Austin

11

enrolled at GCU in 2013, and her claims are predicated on her enrollment at GCU," "[b]y her own allegations, the limitations period for Austin's claims began when she enrolled and expired in 2017." Id. at 12.

Plaintiffs respond that "[t]he Amended Complaint indisputably alleges . . . actionable conduct towards Mrs. Austin as recently as 2016 and 2017 that resulted in her paying tuition and enrolling in classes." Doc. No. [21], p. 8 (citing Doc. No. [12], ¶¶ 2, 77–87). Plaintiffs also argue the doctrines of separate accrual and equitable tolling apply to Austin's RICO claims. Id.

### 1. Fraud Claims

A federal court sitting in diversity must apply the substantive law, including statutes of limitations, of the relevant state, which for Austin's claims is Georgia. See Miss. Valley Title Ins. Co. v. Thompson, 802 F.3d 1248, 1251 (11th Cir. 2015). Under Georgia law, the statute of limitations for fraud claims is four years. Nash v. Ohio Nat'l Life Ins. Co., 266 Ga. App. 416, 418, 597 S.E.2d 512, 515 (2004); O.G.C.A. § 9–3–31. "In cases involving allegations of actual fraud, the statute of limitations is tolled until the fraud is discovered, or could have been discovered through the exercise of ordinary care and diligence." Watkins v. Capital City Bank, 711 F. App'x 591, 592 (11th Cir. 2018) (citing Nash, 266 Ga. App. 597 S.E.2d at 515). It is the plaintiff's burden to show the

existence of facts that would toll the statute of limitations. Id. A court may dismiss a claim under Rule 12(b)(6) when "it is apparent from the face of the complaint that the claim is time-barred." Patel, 605 F. App'x at 966.

First, Austin argues that her claims are based not only on alleged fraud taking place before she enrolled at GCU, but also on fraud taking place after she enrolled. Id. However, the injury alleged by Plaintiffs is that Defendants fraudulently induced them to enroll at GCU, either by affirmative misrepresentation or fraudulent omission.[3] Thus, the question is when Austin discovered or could have reasonably discovered the alleged fraud which induced her to enroll. Plaintiffs argue that "Austin has alleged that Defendants successfully concealed the true nature of their scheme through misleading communications" and that "Plaintiffs had no reason to know they were being

---

[3]     See Doc. No. [12], Count I, ¶ 149 ("Defendants intentionally and improperly failed to disclose the truth in order to induce Plaintiffs and other Class members to enroll . . . ."); Count II, ¶ 163 ("Had GCE recruiters accurately represented that its programs were not accredited, Plaintiffs and the other Class members would not have enrolled . . . ."); Count III, ¶ 173 ("The enterprise was characterized by Defendants' false representations and omissions . . . which enabled the enterprise to enroll students . . . ."); Count IV, ¶ 199 (same); Count V, ¶ 208 ("Defendants intended that Plaintiffs . . . rely upon the misrepresentations and omissions of GCE staffers which would lead Plaintiffs . . . to choose to enroll in a GCU program . . . ."); Count VI, ¶ 218 ("Plaintiffs and the members of the Class relied on the truth of GCE's misrepresentations. Plaintiffs and members of the Class would not have enrolled [in] programs not accredited . . . .").

defrauded" because "the fraud was impossible to tell from the misleading information they had been given as to Defendants' practices." Doc. No. [21], p. 11.

"Although issues concerning a plaintiff's diligence in discovering fraud usually must be resolved by the trier of fact, this 'is not always the case. A party may fail to exercise due diligence as a matter of law.'" Nash, 266 Ga. App. at 418, 597 S.E.2d at 515 (quoting McClung Surveying v. Worl, 247 Ga. App. 322, 324, 541 S.E.2d 703, 706 (2000)). Austin alleges Defendants' misrepresentations or omissions caused her to believe, wrongly, that completion of her graduate program would lead to licensure in Georgia. However, that belief would have quickly been corrected had she read the Enrollment Agreement she signed on October 16, 2013—which clearly stated, under a bolded heading reading "Georgia Authorization": "This program is not intended to lead to licensure or certificate advancement through the Georgia Professional Standards Commission ('GaPSC')." Doc. No. [17-3], p. 10.[4]

---

[4]    The Eleventh Circuit has held that a district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). "In this context, 'undisputed' means that the authenticity of the document is not challenged." Id. Here,

Thus, despite Plaintiffs' contention that "Austin had never had any reason to suspect that her [GCU] degree would not be accepted by Georgia," before January of 2017, Doc. No. [12], p. 44, ¶ 79, she could have discovered this on October 16, 2013 had she simply read her Enrollment Agreement. The statute of limitations ran four years from the date on which she could have discovered the alleged fraud in the exercise of due diligence—on October 16, 2017. The Court finds that Austin's fraud claims are untimely.

### 2. RICO Claims

The RICO statute does not include an express statute of limitations; however, the Supreme Court has held that RICO's civil enforcement provisions are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley–Duff & Assoc., Inc., 483 U.S. 143, 152–53 (1987). Austin argues the doctrines of separate accrual and equitable tolling apply to her RICO claims. Doc. No. [21], pp. 9–12. The Court finds neither of these doctrines apply to Austin's claims.

---

the gravamen of Austin's claims is that she was fraudulently included to enroll at GCU. Thus, her Enrollment Agreement is central to her claims. Plaintiffs have not challenged the authenticity of the attached Enrollment Agreement signed by Austin. In fact, they do not address it in their response to Defendants' Motion at all. See generally Doc. No. [21].

i.   **Doctrine of separate accrual**

This doctrine establishes that each time a new and independent RICO injury is discovered, a new cause of action arises as to that injury. See Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013). Thus, the injury giving rise to the "separate accrual" must be "new and independent," rather than a "continuation of the initial injury that resulted from the [predicate act]." Pilkington v. United Airlines, 112 F.3d 1532, 1537–38 (11th Cir. 1997). Plaintiffs argue that, at least for Austin's RICO claims, "each time Mrs. Austin made tuition payments in reliance upon Defendants' fraudulent statements the statute of limitations clock was restarted." Doc. No. [21], p. 10.

The Court finds that each new tuition payment was not a new predicate act under RICO. See Pilkington, 112 F.3d at 1535 (noting that separate accrual may apply where "a plaintiff [is] injured by one or more predicate acts" under the RICO statute) (citation omitted)). Each new tuition payment did not establish a new injury—it was a continuing injury stemming from the alleged fraud which induced Austin to enroll at GCU. See also Ward v. Dickinson Fin. Corp. II, No. 7:14-CV-8 HL, 2015 WL 1020151, at *11 (M.D. Ga. Mar. 9, 2015) (finding that equitable tolling did not apply where each new overdraft fee

16

charged was a continuation of the initial injury). Thus, separate accrual does not apply to Austin's RICO claims.

## ii. Doctrine of equitable tolling

The Eleventh Circuit has held that a plaintiff seeking equitable tolling must show that she acted with due diligence but was prevented from discovering the injury due to the defendant's active deception. Youngblood-W. v. Aflac Inc., 796 F. App'x 985, 991 (11th Cir. 2019) (citing Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 972 (11th Cir. 2016)); see also Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1252 (11th Cir. 2001) ("Equitable tolling is defeated . . . when it is shown that indisputably the plaintiffs had notice sufficient to prompt them to investigate and that, had they done so diligently, they would have discovered the basis for their claims.") (internal quotations and citation omitted)). Thus, tolling applies only "because of extraordinary circumstances that are both beyond [the plaintiff's] control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999).

While Plaintiffs are correct that tolling is generally a fact-intensive inquiry, a court may dismiss claims on limitations grounds "if it is apparent from the face of the complaint that the claim is time-barred." United States ex

rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir.), cert. granted sub nom. Cochise Consultancy, Inc. v. U.S. ex rel. Hunt, ___ U.S. ___, 139 S. Ct. 566, (2018), and aff'd, ___ U.S. ___, 139 S. Ct. 1507 (2019). And courts in this Circuit have done so where it is clear equitable tolling does not apply. See My24HourNews.com, Inc. v. AT&T Corp., 791 Fed. App'x 788 (11th Cir. Oct. 16, 2019) (affirming dismissal of fraud claims as untimely and rejecting tolling by fraudulent concealment argument); Ward, No. 7:14-cv-8, 2015 WL 1020151, at *11 (dismissing RICO claims as time-barred and noting that equitable tolling is "the exception, not the rule."); Lefont v. SunTrust Mortg., Inc., No. 2:10-cv-036-RWS, SSC, 2011 WL 679426, at *6 (N.D. Ga. Jan. 27, 2011) (rejecting equitable tolling by concealment argument and dismissing fraud-based statutory claims).

The Court finds that "[D]efendants' fraud did not debar or deter [Austin] from discovering [her] fraud-based claims." My24HourNews.com, Inc., 791 F. App'x at 802. Because Austin's Enrollment Agreement clearly stated her program was not intended to lead to licensure or certificate advancement through GaPSC, see supra, it cannot be said that "extraordinary circumstances . . . unavoidable even with diligence" prevented Austin from discovering the

alleged fraud. See Sandvik 177 F.3d 1269, 1271. Thus, equitable tolling does not apply, and Austin's RICO claims are barred by the statute of limitations.

Because the Court finds all of Austin's claims are barred by the statute of limitations, and Defendants are not subject to personal jurisdiction for Baker, Miller, and Wiley's claims, it need not address Defendants' other arguments outlined in its Motion to Dismiss. See Doc. No. [17-1], pp. 16–30.

### III.   MOTION TO COMPEL ARBITRATION

Defendants argue that, if Plaintiffs Austin, Baker, and Wiley's claims are not subject to dismissal, they are contractually required to arbitrate. See Doc. Nos. [18], [18-1]. Because the Court finds it lacks personal jurisdiction over Defendants for Baker and Wiley's claims, and Austin's claims are barred by the statute of limitations, the Second Motion to Compel Arbitration (Doc. No. [18]) is **DENIED** as **MOOT**. Accordingly, Plaintiffs' Motion to Defer Ruling re: 18 Second Motion for Arbitration (Doc. No. [19]) is also **DENIED** as **MOOT**.

### IV.   CONCLUSION

For the forgoing reasons,  Defendants' Motion to Dismiss Amended Complaint (Doc. No. [17]) is **GRANTED**. Defendants' Second Motion for Arbitration (Doc. No. [18]), and Plaintiffs' Motion to Defer Ruling re: [18] Second Motion for Arbitration (Doc. No. [19]) are **DENIED** as **MOOT**.

**IT IS SO ORDERED** this  11th  day of May, 2020.

 s/Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**